OPINION
{¶ 1} Defendant-appellant Albert Myles appeals from his conviction and sentence for Possession of Crack Cocaine. Myles's assigned counsel has filed a brief purporting to be a hybrid Anders brief, under Anders v.California (1967), 386 U.S. 738, 87 S.Ct. 1396, in which one assignment of error is asserted — that the trial court erred in its imposition of a consecutive sentence without the required statutory findings — and three other potential assignments of error are discussed, with counsel concluding that neither they, nor any other potential assignments of error other than the one sentencing error asserted, have arguable merit.
 {¶ 2} We treated this appeal as though it were being pursued underAnders v. California, supra, and afforded Myles an opportunity to file his own, pro se brief. He has done so, asserting three assignments of error. The State filed a response to Myles's pro se brief, perhaps having been misled by our own treatment of the brief filed by Myles's assigned counsel as though it were an Anders brief.
 {¶ 3} We conclude that this appeal is not being pursued underAnders v. California, supra, because assigned counsel has not concluded that the appeal is wholly frivolous. Because we nevertheless invited Myles to file his own, pro se brief, we have considered the assignments of error he asserts, as well as the potential assignments of error discussed in the brief filed by his counsel. We find none of these assignments of error to have arguable merit. Because we conclude thatAnders v. California, supra, does not apply to this appeal, we have not independently reviewed the record.
 {¶ 4} On the sentencing error assigned, we conclude that State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, requires the reversal of Myles's sentence, and the remand of this cause for re-sentencing. Accordingly, the sentence imposed by the trial court is Reversed, and this cause is Remanded for re-sentencing in accordance with State v.Foster, supra.
 I — Background {¶ 5} In August, 2005, late in the evening, two Dayton police officers discovered that there was an outstanding warrant for Myles's arrest after responding to a protection-order violation dispatch at his home. Myles was not there when the police arrived.
 {¶ 6} A little after midnight, Myles's wife called police, and the police officers returned to the home. After initially denying that he was Myles, Myles finally acknowledged his identity. One officer then told Myles to step down from the porch, and then patted Myles down. As the officer tried to handcuff Myles from behind, the officer asked Myles to put his cigar down, which Myles ultimately did. Myles then allowed the officer to put the handcuff on his left hand, but put his right hand in his pocket.
 {¶ 7} Concerned that Myles might be reaching for a weapon, the officer tried to pull Myles's hand from his pocket. The other officer drew her taser to encourage Myles's compliance. When Myles finally removed his right hand from his pocket, it was cupped, and the officer handcuffing him could see about one inch of a plastic baggie protruding from it. Myles quickly tossed the baggie across the front of his body, and then submitted to being handcuffed.
 {¶ 8} By this time, a third police officer had arrived on the scene. The police officer who had handcuffed Myles took him to the police cruiser, while the other two officers searched for the baggie. Within five minutes, one of the officers found a plastic baggie near where Myles had been arrested. The baggie contained twelve grams of what was later determined to be crack cocaine.
 {¶ 9} On the way to jail, Myles made an unsolicited statement that a man walking by the house had thrown the baggie into the yard, that Myles had just picked it up when the officers arrived, and that the baggie had never been in his pants pocket, but had been in his hand the whole time.
 {¶ 10} Myles was charged by indictment with Possession of Crack Cocaine, in an amount equaling or exceeding ten grams, but less than twenty-five grams. Following a two-day jury trial, Myles was found guilty, a judgment of conviction was entered, and Myles was sentenced to a two-year term of imprisonment, to be served consecutively with a sentence in another case. Myles appeals from his conviction and sentence.
 II — Myles's Sole Assignment of Error {¶ 11} Myles's sole assignment of error is as follows:
 {¶ 12} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE SENTENCES."
 {¶ 13} Myles contends that the trial court failed to make the findings required by R.C. 2929.14(E)(4) for consecutive sentences. The State has not responded to this assignment of error.
 {¶ 14} Under State v. Foster, supra, ¶ 104, a sentence imposed under the portions of the sentencing statute found unconstitutional, and therefore severed from the rest of the sentencing statute, byFoster, must be reversed and the cause remanded for re-sentencing consistent with Foster. One of the portions of the sentencing statute found unconstitutional in Foster is the provision in R.C. 2929.14(E)(4) for findings by a trial judge as a predicate for the imposition of consecutive sentences. Since the consecutive sentence imposed in this case implicates that portion of the statute, we conclude that State v.Foster, supra, requires the reversal of the sentence.
 {¶ 15} Myles's sole assignment of error is sustained, to the extent noted herein.
 III — Anders v. California Does Not Apply {¶ 16} Anders v. California, supra, establishes an appellate procedure that may be employed to vindicate a criminal defendant's right to counsel on appeal "if counsel finds his case to be wholly frivolous, after a conscientious examination of it[.]" Id., at 386 U.S. 744,87 S.Ct. 1400. In the case before us, Myles's appellate counsel did not find his case on appeal to be wholly frivolous, because he has asserted one assignment of error — the assignment of error considered in Part II, above — that he found to have merit. Indeed, to the extent noted, we have agreed that it has merit. Because appellate counsel did not find this appeal to be wholly without merit, Anders v. California, supra, does not apply.
 {¶ 17} Nevertheless, in processing this appeal administratively, we mistakenly concluded that an Anders brief had been filed on Myles's behalf, and we invited him to assert assignments of error in his own, pro se brief, as required by Anders v. California. Under these circumstances, we deem it equitable to consider the assignments of error Myles has asserted, and determine whether any of them have arguable merit.
 {¶ 18} Myles first asserts that his trial counsel was ineffective for having failed to move to suppress his statement to police, or the baggie, and for having failed to seek a fingerprint analysis of the baggie. We conclude that this assertion has no arguable merit. The statement to the police was unsolicited, so there would be no basis to suppress it. Myles has not demonstrated any basis to seek to suppress the baggie. As to the fingerprint analysis, even if fingerprints could be lifted from the baggie and analyzed, Myles had admitted to having handled the baggie, so they would as likely be inculpatory as exculpatory.
 {¶ 19} Myles next asserts that he was denied a fair trial because he, an African-American, was tried by a jury consisting of "all white people and/or non-African-Americans." He argues, in support of this proposition, that:
 {¶ 20} "It is well known that prospective jurors are chosen based upon voter registration and that White people register overwhelmingly more than Blacks. While the record does not reveal that all jurors were White, defense counsel knew, or should have known, the propensity of White persons to stereotype young African-American men as drug dealers or other street criminals. Defense counsel should have used peremptory challenges until there was at least some racial diversity with the jury. When a Black man is tried by an all White jury in a city that could at least ensure a diverse jury pool." (Emphasis in original.)
 {¶ 21} As the State notes, Myles does not assert any systematic or intentional exclusion of African-Americans from the jury pool, and even acknowledges that the record does not reflect that the jurors were all Caucasian.
 {¶ 22} Finally, Myles asserts that the evidence was insufficient to convict him. We have noted the evidence in Part I, above. We conclude that it is ample to permit a reasonable jury to have found Myles guilty beyond reasonable doubt.
 {¶ 23} In short, we conclude that none of the assignments of error asserted by Myles in his pro se brief have any arguable merit. We likewise conclude that there is no arguable merit to any of the potential assignments of error mentioned in the brief filed by Myles's assigned counsel, but found by counsel to have no merit. Besides the evidentiary and ineffective assistance of counsel issues, these include a potential assignment of error that the trial court erred by assessing court costs against Myles in the termination entry, without having assessed court costs at the sentencing hearing. As counsel noted, we have previously determined that there is no duty to assess court costs at the sentencing hearing. State v. Powell, 2006-Ohio-263, ¶ 11.
 IV — We Have No Independent Duty to Review the Record {¶ 24} Because Anders v. California, supra, does not apply to this appeal, we have no independent duty to review the record, and we have not done so.
 V — Disposition {¶ 25} Myles's sole assignment of error having been sustained, the sentence imposed by the trial court is Reversed, and this cause is Remanded for re-sentencing in accordance with State v. Foster, supra.
WOLFF, P.J., and GRADY, J., concur.