[Cite as *State v. Brammer*, 2018-Ohio-3067.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-56 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-390 |
| | : | |
| RICKY C. BRAMMER | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of August, 2018.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, 55 Greene Street, 1st Floor, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

KRISTA GIESKE, Atty. Reg. No. 0080141, 810 Sycamore Street, 3rd Floor, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Ricky C. Brammer appeals his conviction and sentence for two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), both felonies of the third degree, and one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), a felony of the first degree. Brammer filed a timely notice of appeal with this Court on October 20, 2017.

{¶ 2} In January of 2017, Brammer was indicted in Greene County Case No. 2017 CR 0023 for the following offenses: Counts I and III, aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), both felonies of the third degree; Counts II and IV, aggravated possession of drugs, in violation of 2925.11(A), both felonies of the third degree; Count V, aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), a felony of the second degree; Count VI, aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the second degree; Count VII, aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the first degree, accompanied by a major drug offender specification; and Count VIII, aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the first degree, also accompanied by a major drug offender specification. Also attached to Counts VII and VIII were one-year firearm specifications. Finally, the indictment included the following forfeiture specifications: 1) $3,753.00 in cash; 2) 2001 Harley-Davidson motorcycle; 3) Hawkins .50 caliber muzzle loader rifle; 4) Stihl pole saw and parts; 5) Leinad .45 caliber firearm; and 6) $39,017.18 seized from multiple bank accounts belonging to Brammer.

{¶ 3} Thereafter, Brammer entered into a plea agreement with the State whereby the indictment in Case No. 2017 CR 0023 was dismissed. In return for dismissal of the

indictment, Brammer agreed to plead guilty to a separate Bill of Information filed on July 24, 2017, in Greene County Case No. 2017 CR 0390.

{¶ 4} Pursuant to the Bill of Information, Brammer pled guilty to two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), both felonies of the third degree (Counts I and II), and one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the first degree (Count III). The basis for the Bill of Information involved controlled drug buys from Brammer conducted by the Greene County A.C.E. Task Force. Specifically, on November 7, 2016, Brammer sold or offered to sell a quantity of methamphetamine equal to or exceeding the bulk amount but less than five times the bulk amount (Count I). On November 9, 2016, Brammer sold or offered to sell a similar quantity of methamphetamine (Count II). Thereafter, on November 16, 2016, Brammer prepared for sale a quantity of methamphetamine equal or exceeding 50 times the bulk amount but less than 100 times the bulk amount (Count III).

{¶ 5} The plea hearing was held on July 27, 2017. As part of the plea agreement, the State did not attach the Major Drug Offender or firearm specifications to the first degree felony charge in Count III. Additionally, Brammer agreed to all of the forfeiture specifications, with the exception of the specification requiring the seizure of $39,017.18 belonging to Brammer. The State agreed not to pursue a forfeiture of the $39,017.18. After conducting a Crim.R. 11 colloquy, the trial court found Brammer guilty of the three counts contained in the Bill of Information and instructed the probation department to complete a presentence investigation report (PSI) for review prior to sentencing. Significantly, the trial court also informed Brammer that, unless he was found to be

indigent, he was subject to mandatory minimum fine of $20,000.00 with a maximum fine of $40,000.00.

{¶ 6} On September 15, 2017, Brammer filed a motion for waiver of the mandatory fine and a supporting affidavit. In the motion, Brammer argued that based upon his failing health and indigent status, he did not have the present and/or future ability to pay the mandatory fine. Shortly thereafter on September 20, 2017, the trial court sentenced Brammer to three years each on Counts I and II, and nine years on Count III. The trial court ordered that the sentences for Counts I and II be served concurrently to the sentence imposed for Count III, for an aggregate sentence of nine years in prison. Furthermore, because the State did not pursue forfeiture of the $39,017.18 originally seized from Brammer's bank accounts, the trial court found that he was now able to pay the mandatory minimum fine of $20,000.00 and imposed the fine. The trial court ordered that the remaining balance of $19,017.18 be remitted to Brammer.

{¶ 7} It is from this judgment that Brammer now appeals.

{¶ 8} Brammer's first assignment of error is as follows:

THE TRIAL COURT ERRED IN SENTENCING BRAMMER TO SERVE A

NINE-YEAR TERM OF INCARCERATION.

{¶ 9} In his first assignment, Brammer argues that his nine-year sentence is contrary to law because the trial court failed to properly consider and apply R.C. 2929.11, which governs the overriding purposes of felony sentencing, and R.C. 2929.12 which sets forth the seriousness and recidivism factors for the court to consider in imposing sentence. We note that Brammer acknowledges that his nine-year sentence is within the applicable statutory range and is significantly less than the maximum sentence of 17

years.

{¶ 10} As this Court has previously noted:

"This court no longer applies an abuse of discretion standard when reviewing felony sentences, as the Supreme Court of Ohio has made clear that felony sentences are to be reviewed in accordance with the standard set forth in R.C. 2953.08(G)(2)." *State v. McCoy*, 2d Dist. Clark No. 2016–CA–28, 2016–Ohio–7415, ¶ 6, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 10, 16. *Accord State v. Rodeffer*, 2013–Ohio–5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.) Under the plain language of R.C. 2953.08(G)(2), "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum* at ¶ 1. "This is a very deferential standard of review, as the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." *State v. Cochran*, 2d Dist. Clark No. 2016–CA–33, 2017–Ohio–217, ¶ 7, citing *Rodeffer* at ¶ 31.

Even before *Marcum*, we had indicated "[t]he trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give reasons for imposing maximum or more than minimum sentences." (Citation omitted.) *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012–Ohio–5759.

*Accord State v. Terrel*, 2d Dist. Miami No. 2014–CA–24, 2015–Ohio–4201, ¶ 14. But "in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12." (Citations omitted.) *State v. Castle*, 2016–Ohio–4974, 67 N.E.3d 1283, ¶ 26 (2d Dist.). * * *

*State v. Folk*, 2d Dist. Montgomery No. 27375, 2017–Ohio–8105, ¶ 5–6.

{¶ 11} Initially, we note that at Brammer's sentencing hearing, the trial court made the following statement:

The Court has considered the statements of the parties, the Pre-Sentence Report, purposes and principles of sentencing, and I will balance the seriousness and recidivism factors pursuant to [R.C.] 2929.12.

{¶ 12} Additionally, in its judgment entry of conviction, the trial court stated as follows:

The Court has considered the record, oral statements, victim impact statement, and the pre-sentence report. The Court has considered the purposes and principles of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation and restitution. The Court is guided by the overriding purposes of felony sentencing, including protection of the public from future crime by the defendant and others and punishment of the defendant, using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. R.C.

2929.11[.]

{¶ 13} R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 14} R.C. 2929.12(B) sets forth nine factors indicating an offender's conduct is more serious than conduct normally constituting the offense. R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious. R.C. 2929.12(D) and (E) each list five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record and "whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses."

{¶ 15} At Brammer's sentencing hearing, the trial court stated that it had received

and reviewed the PSI. The trial court also stated that it had considered "the purposes and principles of sentencing and recidivism factors of the revised code," and it noted that Brammer's conviction for first degree felony aggravated trafficking in drugs carried a mandatory prison sentence.

{¶ 16} As previously stated, Brammer's pled guilty to charges involving two third degree felony controlled drug buys (Counts I and II). Based on the two controlled drug buys, police officers from the A.C.E. Task Force were able to secure a search warrant which revealed a first degree felony amount of methamphetamine in Brammer's possession (Count III).

{¶ 17} We also note that in his PSI, Brammer attempted to minimize his role in the offenses and, according to the PSI drafter, displayed "absolutely no remorse." PSI, p. 7. Brammer denied that he sold methamphetamine and stated that methamphetamine found in his possession belonged to a friend. Brammer further stated that he was "set up" by the confidential source who conducted the controlled drug buys on behalf of the police. *Id.* The PSI author stated that Brammer "denie[d] all wrong doing and represented himself as the victim." *Id.* These comments ostensibly demonstrate a total lack of accountability and remorse on Brammer's part.

{¶ 18} Lastly, Brammer's PSI discloses that he has a prior adult criminal record for a felony offense of violence. Specifically, in 1999, Brammer was charged with two counts of attempted murder and one count of felonious assault. While the two counts of attempted murder were dismissed, Brammer was convicted of the felonious assault count. Brammer's felonious assault conviction was approximately 19 years old, but when he was arrested for the instant offenses, two firearms were confiscated from him by

the police.   When imposing sentence, the trial court could take into account the fact that Brammer was previously convicted of felonious assault and was now in possession of two firearms while at the same time trafficking in significant quantities of methamphetamine.

{¶ 19} In the case at bar, the trial court imposed a sentence within the permissible statutory range.   The record establishes that the trial court properly reviewed the PSI, Brammer's statements, as well as the statements of counsel.   The record further establishes that the trial court considered the principles and purposes of sentencing under R.C. 2929.11, and that it balanced the seriousness and recidivism factors set forth in R.C. 2929.12.   In sum, we are unable to find "by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23. The sentence is not contrary to law.

{¶ 20} Brammer's first assignment of error is overruled.

{¶ 21} Brammer's second and final assignment of error is as follows:

THE TRIAL COURT ERRED IN FAILING TO WAIVE THE MANDATORY

DRUG FINE DUE TO BRAMMER'S ENDURING INDIGENT STATUS.

{¶ 22} In his second assignment, Brammer contends that the trial court erred when it did not waive the mandatory fine with respect to his conviction for Count III.   As previously discussed, Brammer was ordered to pay a $20,000.00 mandatory fine as part of his sentence.   Brammer disputes the imposition of the fine, alleging violations of R.C. 2929.18(B)(1), which prohibits an imposition of an otherwise mandatory fine against an indigent offender, and R.C. 2929.19(B)(5), which requires consideration of the offender's present and future inability to pay.

{¶ 23} R.C. 2929.18(B)(1) imposes a mandatory fine for a first, second, or third

degree felony violation of any provision of Chapter 2925, 3719, or 4729 of the Revised Code. With respect to Count III, Brammer pled guilty to one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), a felony of the first degree, thereby subjecting him to the mandatory fine set forth in R.C. 2929.18(B)(1).

{¶ 24} Although Brammer's fine was mandatory under R.C. 2929.18, the trial court still was obligated by R.C. 2929.19(B)(5) to consider his "present and future ability to pay." A hearing on a defendant's ability to pay is not required. Nor is a court required to make findings. "All that is required is that the trial court 'consider' a defendant's ability to pay." *State v. Hodge*, 2d Dist. Montgomery No. 23964, 2011-Ohio-633, ¶ 55 (citations omitted). "[A] trial court is not required to expressly state that it considered [a defendant's] ability to pay a fine." *State v. Parker*, 2d Dist. Champaign No. 03CA0017, 2004-Ohio-1313, ¶ 42. Under appropriate circumstances, a reviewing court may infer that a trial court considered the issue. *Id.*

{¶ 25} For purposes of the statute, being "indigent" and being "unable to pay" are not the same. Indigency concerns a defendant's current financial situation, whereas an inability to pay encompasses his future financial situation as well. *See, e.g.*, *State v. Gipson*, 80 Ohio St.3d 626, 636, 687 N.E.2d 750 (1998) ("[A] trial court's determination whether an offender is indigent and is unable to pay a mandatory fine can (and should) encompass future ability to pay. If the General Assembly had intended otherwise, the statutes would have been written to permit a waiver of the mandatory fines based solely on a defendant's present state of indigency, and would not have also required trial courts to consider the additional question whether the offender is 'unable to pay.' "); *State v. Ficklin*, 8th Dist. Cuyahoga No. 99191, 2013-Ohio-3002, ¶ 13 (recognizing that "

'indigency' refers to a present financial ability and 'is unable to pay' encompasses a future ability to pay as well").

**{¶ 26}** Under the statute, "the burden is upon the offender to affirmatively demonstrate that he or she is indigent *and is unable to pay* the mandatory fine." (Emphasis sic.) *Gipson* at 635. The fine is mandatory unless the offender establishes current indigence and an inability to pay. *Id.* A trial court need only consider the issue, which it frequently can do by reviewing a pre-sentence investigation report that contains enough pertinent information. *State v. Barker*, 2d Dist. Montgomery No. 26061, 2014-Ohio-3946, ¶ 15. "We review a trial court's decision on an offender's present and future ability to pay a mandatory fine for an abuse of discretion." *Id.* at ¶ 16. An abuse of discretion often involves a decision that is unreasonable. *Id.*

**{¶ 27}** Having reviewed the record, we see no abuse of discretion in the trial court's refusal to waive Brammer's mandatory fine. As set forth above, the fine in this case was mandatory unless Brammer alleged in a pre-sentence affidavit that he was indigent *and unable to pay* the mandatory fine. See R.C. 2929.18(B)(1); *Gipson* at 635. Here, the first affidavit Brammer filed prior to his sentencing hearing is a hand-completed copy of Ohio Public Defender Form 206R, which is the "Financial Disclosure/Affidavit of Indigency" form utilized for determining whether a defendant is entitled to appointment of counsel. Therein, Brammer averred that he was indigent and was "financially unable to retain private counsel without substantial hardship[.]" Generally speaking, alleging indigency and an inability to afford private counsel does not establish an inability to pay a fine. *State v. Plemons*, 2d Dist. Montgomery Nos. 26434, 26435, 26436, 26437, 2015-Ohio-2879, ¶ 9. Indeed, "[a] finding of indigence for purposes of appointed counsel does not shield

the defendant from paying a fine." *State v. Lewis*, 2d Dist. Greene No. 2011–CA–75, 2012–Ohio–4858, ¶ 16. Here, Brammer filed a second personal affidavit attached to his motion for waiver in which he listed his numerous medical conditions. In the second affidavit, Brammer averred that he does "not have a future ability to be gainfully employed because of [his] medical conditions."

{¶ 28} As previously discussed, however, the State elected to not pursue the forfeiture of the $39,017.18 originally seized from Brammer's bank accounts. This decision resulted in a cash asset flowing back to Brammer, far exceeding the $20,000.00 fine. Finally, Brammer's PSI indicates that he previously received disability in the amount of $1,000.00 per month, but was currently being supported by his mother and father. Brammer also reported that he was previously employed by a tree service company for ten years. Notwithstanding his affidavits alleging his indigent status, the record clearly establishes that Brammer was able to pay the mandatory fine imposed by the trial court. Accordingly, the trial court did not err when it found that Brammer was currently able to pay the mandatory minimum fine of $20,000.00.

{¶ 29} Brammer's second and final assignment of error is overruled.

{¶ 30} Both of Brammer's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J., and FROELICH, J., concur.

Copies mailed to:

Nathaniel R. Luke

Krista Gieske
Hon. Stephen Wolaver